IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

SHAWNNA MARIE CHAPMAN,    )
               Plaintiff,    )
V.    )    3:25-cv-___ *00102 LPR*
                             )
KIDSPOT JACKSON COUNTY,    )
INC.,    )
               Defendant.    )

**COMPLAINT**

*s case assigned to District Judge ___ BudoFsicy*
*to Magistrate Judge ___ VoLPe*

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUN 0 3 2025

TAMMY H. DOWNS, CLERK
By: ___
DEP CLERK

Plaintiff Shawnna Marie Chapman pleads her Complaint against Defendant KidSPOT Jackson County, Inc.:

1.    This case is about a company's violation of federal and state law by disciplining, retaliating against, and constructively discharging a special needs teacher for associating with and attempting to protect disabled students in violation of the Americans with Disabilities Act, as amended, and the Arkansas Civil Rights Act.

2.    Shawnna Marie Chapman ("Shawnna" or "Chapman") is and was at all times relevant to this complaint a citizen and resident of Batesville, Independence County, Arkansas.

3.    KidSPOT Jackson County, Inc. ("KidSPOT") is and was at all times relevant to this complaint a corporation organized under the laws of the State of Arkansas with is principal place of business in

Tuckerman, Jackson County, Arkansas. At all times relevant to this complaint, KidSPOT was engaged in commerce or in an industry affecting commerce and employed fifteen or more employees for each working day during each of twenty or more calendar workweeks in the current or preceding calendar year. Shawnna was employed by KidSPOT beginning in November 2023. It may be served through its registered agent, the Gina Deuter at 1801 Grant Avenue, Jonesboro, AR 72401.

4.    Jurisdiction is appropriate in this Court based on federal question jurisdiction and an amount in controversy in excess of $75,000.00, exclusive of interest and costs, and diversity of citizenship. 28 U.S.C. §§ 1331 & 1332. There is also supplemental jurisdiction over the state-law causes. Venue is appropriate in the Eastern District of Arkansas, Northern Division.

5.    KidSPOT operates a facility that cares for children with disabilities. Shawnna was a KidSPOT employee from November 2023 until January 19, 2025. In May 2024, Shawna was moved into a Lead Special Development position. Her room, Room 5, was assigned 9 children, including MC1, a minor child with severe disabilities.

Shawna's job was to provide education and therapy to children with disabilities, essentially acting as a teacher. MC1's disabilities required intense one on one attention from Chapman, was very physically demanding for Chapman, and involved the risk of Chapman being injured. MC1 would bang their head on the ground and wore a helmet for protection. Chapman was sometimes the only teacher in the room with MC1 and 8 other students.

6. Almost immediately, Chapman complained to management about her inability to adequately care for MC1 continuously and the need for more aids to assist her in the classroom. Chapman made clear at this point, and onwards until her constructive discharge, that she was requesting help for Chapman due to her association with and advocacy for MC1, which are protected activities under federal and state law. It was not until October 25, 2024, however, that the office staff fully realized how dangerous MC1 was after an office employee filled in for Chapman in her classroom. KidSPOT still failed to appropriately accommodate Chapman and assist her due to her association with MC1. Between May 2024 and October 25, 2024, KidSPOT was aware that Chapman was struggling to care for

-3-

MC1 adequately, but KidSPOT was turning a blind eye towards Chapman's ongoing complaints about problems with MC1. On an after October 25, 2024, KidSPOT attempted to react to Chapman's long unaddressed concerns about MC1 and their affect on and damage to Chapman.

7.    Beginning in November 2024, Chapman began compiling and reporting MC1's behavior and Chapman's injuries caused by MC1 to the office in writing. She was then offered a new job by a third party with a tuition reimbursement at a nearby college. KidSPOT asked Chapman to stay as an employee and promised her a scholarship to compensate for her loss of the opportunity at the nearby college. Chapman reluctantly agreed to remain in place on those terms, unaware that KidSPOT would continue treating her differently due to her complaints about, and association with, MC1. At all times relevant to this Complaint, Chapman was performing the essential functions of her job and was qualified to continue her employment.

8.    In November, Chapman's supervisor at KidSPOT Shelly Tucker trained Chapman on a "hold" for long periods of time (15-30 minutes) that she wanted Chapman to perform on MC1. This new

directive was a reaction to and in retaliation to Chapman's longstanding association with and effort to protect MC1. Chapman disagreed with this direction as she believed it was not appropriate, legal, or healthy to restrain this handicapped young child, and opposed that instruction to management at KidSPOT. This opposition was a protected activity under state and federal law. Shelly and management disregarded Chapman's objections and protected activities. At all times relevant to this Complaint, Shelly acted in the course and scope of her employment with KidSPOT such that her actions are imputed to it.

9.    On November 24, 2024, Chapman temporarily injured her ability to walk, experiencing a third degree burn. She asked for an accommodation for her burned leg by moving one of the more active children out of her room, but KidSPOT denied that request. As a result, Chapman continued to sustain injuries and pain by virtue of her teaching MC1 without an accommodation and due to the increase in MC1's aggressive behaviors caused by the new instructions from management, including the 15-30 minute "therapeutic holds" on MC1. Then in December 2024 Chapman was instructed to track bruising on

MC1, keep track of their diaper changes, and track many other details for MC1 that were very time consuming and difficult details to track while caring for 8 other children. These actions were in retaliation for her association with MC1, and was treatment different than persons who had not engaged in protected activities, who had not requested a reasonable accommodation, and who were not associated with persons with a disability.

10. During an IEP (individual education plan) December 9 meeting for MC1, Chapman suggested MC1 be enrolled in a different facility geared towards more severe disabilities given how difficult and nearly impossible it was for them to care for MC1 given management's refusal to provide adequate support and resources to Chapman, and insistence upon Chapman and other staff holding MC1 for 15-30 minutes during each of their difficult outbursts. Management did not want MC1 to leave KidSPOT as a student. But management refused to follow and implement the new IEP for MC1 that resulted from a December 19 meeting.

11. On January 9, Chapman met with Shelly Tucker, Julie Keton, the nurse, and Sarah Sitzer. Chapman made clear that the

situation with MC1 had become unbearable and she requested KidSPOT began following MC1's IEP and treating her properly, and opposed Chapman's disparate treatment due to her association with, and advocacy on behalf of, MC1. At all times relevant to this Complaint, each of these persons was acting in the course and scope of their employment with KidSPOT. Shelly recited Chapman's history of complaints about MC1's treatment, her objections to the physical holds including their illegality, and claimed the physical holds of MC1 were actually "therapeutic holds." Shelly then instructed staff to remove all extra food from MC1, remove them from water activities, remove sensory toys, stop carrying MC1 around, stop all one on one care, continue "therapeutic holds," and for MC1 to wear a compression vest 4 times per day. Chapman further objected that this instruction violated MC1's IEP, was punitive towards them and their disabilities, and would worsen that child's condition. Chapman continued to engage in protected activities. Shelly and management ignored and over rode Chapman's objections.

12. After management made clear Chapman had to comply with their directives and violate MC1's IEP, Chapman tried to comply

with these directives from management without behaving unethically, but MC1's behavior drastically worsened as did Chapman's injuries at work. On January 15, Chapman wrote an incident report that Sarah Sitzer, in management, corrected and rewrote. Chapman again complained that disallowing snacks and food to MC1 was a violation of her IEP. Chapman became very distressed by these issues, and KidSPOT had continued to retaliate against her and treat her differently because of her protected complaints and association with MC1.

13. MC1 predictably became even more aggressive, and bit Chapman when she denied MC1 a snack (biting had not occurred previously with Chapman). On January 21, 2025, MC1 again became aggressive because management had denied them food. Management then decided to relent on the snacks alone, in reaction to Chapman's ongoing complaints, and allow MC1 some snacks. Sarah Sitzer also informed Chapman she could no longer write incident reports. But Chapman's experience with MC1 continued to become predictably unbearable and physically damaging. On January 23, 2025, Chapman felt like she had no choice but to resign given KidSPOT's discriminatory

behavior, determination to punish MC1 contrary to her disabilities, and ongoing retaliation against Chapman for complaining about these issues. Chapman then resigned, as a constructive discharge.

14. As a direct consequence of KidSPOT's disparate treatment of, retaliation, and constructive discharge of Chapman, she has experienced damage, including lost wages, lost benefits, emotional distress, attorney's fees, and other costs, for which she should be compensated, including all remedies allowed by law.

15. On or about February 28, 2025, Chapman timely filed a charge of discrimination with the Equal Employment Opportunity Commission. An accurate copy of that charge is attached as Exhibit A and incorporated by reference. On or about March 13, 2025, the EEOC issued a notice of right to sue letter. An accurate copy of that letter is attached as Exhibit B and incorporated by reference. This case is being filed within 90 days of Chapman's receipt of that notice of right to sue. All claims asserted herein were exhausted before the EEOC.

## COUNT I - DISABILITY DISCRIMINATION

16. Chapman reincorporates and re-alleges paragraphs 1 through 15 by reference.

17. This claim is brought under the Americans with Disabilities Act, as amended, and the Arkansas Civil Rights Act, Arkansas Code Annotated § 16-123-101, *et sequiter*.

18. Plaintiff is a person with a temporary disability, a third degree burn, and was associated with and advocated for a person with a disability, MC1, and each of those disabilities substantially limited her or MC1's ability to enjoy major life activities, including her ability ambulate and MC1's ability to function. Plaintiff was able to perform the essential functions of her job on or before the time she was treated differently and constructively terminated. KidSPOT was an employer at all times relevant to this Complaint under the Americans with Disabilities Act, as amended, and under the Arkansas Civil Rights Act.

19. KidSPOT knew of Plaintiff's disability and her association with MC1, which were motivating factors in KidSPOTs decision to treat Plaintiff differently because of her disability and association with MC1, including the following actions:

(1)    Constructively terminating Chapman;

(2)    Promising Chapman continued employment only to discriminate against her association with MC1 by

-10-

increasing her inappropriate and intolerable contacts and directives towards MC1;

(3)    Ignoring and failing to honor Chapman's requests for a reasonable accommodation;

(4)    Ignoring and overriding Chapman's requests to treat MC1 the same as other students with severe disabilities, Chapman's requests to follow MC1's IEP, her objections to punishing MC1 by removing their food, objections to punishing MC1 by removing their sensory play and toys, and her objections to punishing MC1 by engaging in damaging 15-30 minute holds; and

(5)    Refusing to allow Chapman to follow MC1's IEP, increase staffing in her classroom, and otherwise assist MC1 with their disabling conditions.

20.  On information and belief, similarly situated persons without a disability or who were not associated with a person with a disability were treated better than Plaintiff regarding the above-described actions.

21. Plaintiff seeks all remedies available to her under applicable law, including back pay, front pay, reinstatement, prospective injunctive relief, compensatory damages, punitive damages, attorney's fees, costs, and all other proper relief.

## COUNT II - RETALIATION

22. Chapman reincorporates paragraphs 1 through 21 by reference.

23. This Count is brought under the Americans with Disabilities Act as amended, and the Arkansas Civil Rights Act. Each of those statutes protects persons who engage in protected activity from retaliation.

24. Chapman engaged in protected activities. She opposed discrimination against herself and MC1 due to their disabilities, as detailed above. She opposed KidSPOT's actions to ignore her complaints, punish and treat MC1 differently, force Chapman and other staff to engage in conduct damaging to MC1, KidSPOT's decision to violate MC1's IEP, and other acts of discrimination. KidSPOT declined to favorably alter its behavior in response to these protected activities,

instead increasing its discriminatory behavior and forcing Chapman to resign.

25. These activities are statutorily protected actions and KidSPOT's adverse actions against Chapman as detailed above are causally linked to those actions. Chapman's complaints to KidSPOT were ignored, and Chapman was constructively discharged. Both the timing of these actions amidst Chapman's protected activities and the disability, discrimination evidence as pleaded demonstrate a causal link between the two.

26. Chapman seeks all remedies allowed by the applicable ant-retaliation law, as specified above.

27. Chapman demands a trial by jury as to all issues so triable.

28. Chapman's damages as pleaded exceed $75,000.

WHEREFORE, Plaintiff Shawnna Marie Chapman prays for judgment from and against Defendant KidSPOT Jackson County, Inc. for all remedies available to her under applicable law, including back pay;  back wages; liquidated damages; front pay; reinstatement; lost wages; lost salary; lost employment benefits; other compensation denied or lost; actual monetary losses sustained as a direct result of the violation; for costs and a reasonable attorney's fee; expert witness fees; costs; prejudgment interest; postjudgment interest; and all other just and proper relief.

SHAWNNA MARIE CHAPMAN

Plaintiff

By: _____

BARRETT S. MOORE
Bar Number 2009118
BLAIR & STROUD
P.O. Box 2135
Batesville, Arkansas 72503
Telephone: (870) 793-8350
E-mail: bsm@blastlaw.com

## **DEMAND FOR A JURY TRIAL**

Comes Shawnna Marie Chapman and, pursuant to Rule 38 of the Federal Rules of Civil Procedure, demands her right of trial by jury as to all issues so triable.

SHAWNNA MARIE CHAPMAN

Plaintiff

By: _____

BARRETT S. MOORE
Bar Number 2009118
BLAIR & STROUD
P.O. Box 2135
Batesville, Arkansas 72503
Telephone: (870) 793-8350
E-mail: bsm@blastlaw.com

EEOC Form 5 (11/09)

| **CHARGE OF DISCRIMINATION** | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA   ☒ EEOC | |

and EEOC

*State or local Agency, if any*

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Shawnna Marie Chapman | (870) 321-5934 | 08/20/1992 |

| Street Address | City, State and ZIP Code |
|---|---|
| 160 Rosewood Road | Batesville, AR 72501 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two are named, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| KidSPOT Jackson County, Inc. | More than 80 | (870) 418-0794 |

| Street Address | City, State and ZIP Code |
|---|---|
| 6309 Highway 367 N | Tuckerman, AR 72473 |

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN

☒ RETALIATION   ☐ AGE   ☒ DISABILITY   ☐ GENETIC INFORMATION

☒ OTHER *(Specify)* association discrimination, constructive discharge

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: Nov 2024   Latest: Jan 19, 2025

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I began working at KidSPOT on November 2, 2023. In May 2024, I began working in Room 5 in the Lead Special Development position. This room was assigned to 9 kids, including MC1, a minor child with severe disabilities. My job was to provide education and therapy to children with disabilities, essentially acting as a teacher. MC1's disabilities required intense one on one attention, was very physically demanding, and involved the risk of being injured. MC1 would bang her head on the ground and wore a helmet for protection. I was sometimes the only teacher in the room with MC1 and 8 other students.

I complained about my inability to adequately care for MC1 continuously and need for more aids to assist me. It was not until October 25, 2024, that the office staff fully realized how dangerous MC1 was after an office employee filled in for me in my classroom. Beginning in November 2024, I began compiling and reporting MC1's behavior and my injuries to the office in writing. I was then offered a new job with a tuition reimbursement at a nearby college. KidSPOT asked me to stay as an employee and promised me a scholarship to compensate for my loss of the opportunity at the nearby college.

In November, my supervisor Shelly Tucker trained me on a "hold" for long periods of time (15-30 minutes) she wanted staff to perform on MC1. I disagreed with this direction as I believed it was not appropriate, legal, or healthy to restrain this handicapped young child, and opposed that instruction. Shelly and management disregarded my objections. On November 24 I injured my leg while cooking Thanksgiving dinner, experiencing a third degree burn. I was barely able to walk.

I asked for an accommodation for my burned leg by moving one of the more active children out of my room, but that request was denied. As a result, I continued to sustain injuries and pain in November 2024. Then in December 2024 I was instructed to track bruising

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State or Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.   SIGNATURE OF COMPLAINANT |
| 2-27-25   *Shawnna Chapman*   Date   Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EXHIBIT A
PENGAD 800-631-6989

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | |
| | | and EEOC |

State or local Agency, if any

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

on MC1, keep track of her diaper changes, and track many other details for MC1 that were very time consuming and difficult details to track while caring for 8 other children.

During an IEP (individual education plan) December 9 meeting, I suggested MC1 be enrolled in a different facility geared towards more severe disabilities given how difficult and nearly impossible it was for me to care for MC1 given management's refusal to provide adequate support and resources to me. Management did not want MC1 to leave as a student. But management refused to follow and implement the new IEP for MC1 that resulted from a December 19 meeting.

On January 9, I met with Shelly Tucker, Julie Keton, the nurse, and Sarah Sitzer. Shelly recited my history of complaints about MC1's treatment, my objections to the physical holds including their illegality, and claimed the physical holds of MC1 were actually "therapeutic holds." Shelly then instructed us to remove all extra food from MC1, remove her from water activities, remove sensory toys, stop carrying MC1 around, stop all one on one care, continue "therapeutic holds," and for MC1 to wear a compression vest 4x per day. I objected that this instruction violated MC1's IEP, was punitive towards her and her disabilities, and would worsen her condition. Shelly and management ignored and over rode my objections.

I tried to comply with these directives, but MC1's behavior drastically worsened as did my injuries at work. On January 15, I wrote an incident report that Sarah Sitzer, in management, corrected and rewrote. I again complained that disallowing snacks and food to MC1 was a violation of her IEP. I became very distressed by these issues. MC1 became even more aggressive, bit me when I denied her a snack (biting had not occurred previously with me). On January 21, MC1 again became aggressive because we had denied her food. Management decided to relent on the snacks alone and allow MC1 some snacks. Sarah Sitzer also informed me I could no longer write incident reports. But my experience with MC1 continued to become predictably unbearable and physically damaging. On January 23, I felt like I had no choice but to resign, so I did so.

I believe I was disciplined, punished, denied a reasonable accommodation, and constructively discharged because of my association with and attempt to protect a person with a disability, in retaliation to my repeated protected activities of complaining about the illegal and discriminatory treatment of MC1, and because of my request for a reasonable accommodation, in violation of the Americans with Disabilities Act, as amended. I seek all remedies allowed me by law, including an end to the discrimination, reinstatement, back pay, front pay, compensatory damages, punitive damages, and attorney's fees and costs.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 2-27-25        *Shawnna Chapman*<br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Little Rock Area Office**
820 Louisiana St, Suite 200
Little Rock, AR 72201
(501) 900-6130
Website:  www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 03/13/2025

**To:** Shawnna Chapman
　　　160 Rosewood Road
　　　Batesville, AR 72501
Charge No: 493-2025-01291

EEOC Representative and email:　　RITA BARNES
　　　　　　　　　　　　　　　　　Enforcement Supervisor
　　　　　　　　　　　　　　　　　rita.barnes@eeoc.gov

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 493-2025-01291.

On behalf of the Commission,

Digitally Signed By:William A Cash
03/13/2025
William A Cash
Area Office Director



**Cc:**
Sarah Sitzer
6309 us 67
Tuckerman, AR 72473

6309 Highway 367 N
Trumann, AR 72472

Barrett S Moore
Blair & Stroud
500 East Main, Suite 201 PO Box 2135
Batesville, AR 72503


Please retain this notice for your records.